IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ABC MEDICAL HOLDINGS, INC., and ABC HOME MEDICAL SUPPLY, INC.,**<br>Plaintiffs,<br><br>v.<br><br>**HOME MEDICAL SUPPLIES, INC., and RICK MODDERMAN,**<br>Defendants. | CIVIL ACTION<br><br><br><br>NO.  15-2457 |

**DuBois, J.**                                                                                                               October 5, 2015

# M E M O R A N D U M

## I.     INTRODUCTION

This is a breach of contract and business tort case arising out of the sale of medical supplies in Colorado. Presently before the Court is defendant Home Medical Supplies, Inc.'s Motion to Transfer Venue for the Convenience and Availability of Third Party Witnesses or to Dismiss for Lack of Personal Jurisdiction, filed July 17, 2015. For the reasons set forth below, the Court concludes that it lacks personal jurisdiction over defendant Home Medical Supplies, Inc., and transfers the case to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a).

## II.    BACKGROUND

The facts of this case as alleged in plaintiffs' Amended Complaint and plaintiffs' subsequent briefing on the instant Motion are summarized as follows. Because neither party in this case has requested discovery or an evidentiary hearing on the issue of personal jurisdiction, the Court considers the allegations of ABC's Amended Complaint and the Memorandum of Points and Authorities in Opposition to the Motion to Transfer Venue or to Dismiss for Lack of Jurisdiction, taking them as true and drawing all inferences in favor of ABC. *Metcalfe v.*

*Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) ("[I]n deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." (citations omitted)).

Plaintiff ABC Medical Holdings, Inc., through its subsidiary, ABC Home Medical Supply, Inc., (collectively "ABC") sells urological and ostomy supplies to customers throughout the United States with chronic medical diagnoses, such as spinal cord injuries, spina bifida, multiple sclerosis, and transverse myelitis. Am. Compl. ¶ 11. ABC has its principal place of business in Pennsylvania. Am. Compl. ¶¶ 10-11. Customers pay for supplies directly, or through their private medical insurance, Medicare, or Medicaid. Am. Compl. ¶ 12. ABC identifies new customers for its products through referrals from medical care providers, including individual physicians, clinics, and hospitals. Am. Compl. ¶ 27.

Defendant Rick Modderman ("Modderman") is a former employee of ABC. Am. Compl. ¶ 13. In early 2013, ABC acquired another medical supply company, UroSource. Am. Compl. ¶ 31. The primary asset in the acquisition was UroSource's lists of current and former customers. Am. Compl. ¶ 31. As part of the purchase, ABC agreed to hire Modderman, who had previously worked for UroSource selling medical supplies. Am. Compl. ¶ 32. Modderman was employed as ABC's Regional Sales Manager for Colorado, Wyoming, and New Mexico. Am. Compl. ¶ 37. As Regional Sales Manager, Modderman was responsible for working directly with customers to determine their needs and insurance coverage, and then sell them products supplied by ABC. Am. Compl. ¶¶ 39. In addition, Modderman developed consultative relationships with the medical care providers, hospitals, and clinics that served as sources of new client referrals. Am. Compl. ¶ 39. ABC provided Modderman with training on its internal sales process and goals. Am. Compl. ¶ 40. As of December 2014, ABC had 262

2

Colorado customers who represented $1.1 million in annual sales, all serviced by Modderman. Am. Compl. ¶ 33.

On April 26, 2013, at the outset of his employment with ABC, Modderman signed a Restrictive Covenant Agreement which provides for, *inter alia*, a noncompetition period of two years in "any business whose primary business . . . is the selling of urological supplies, wound care supplies, ostomy supplies, or other durable medical equipment products or services to health care suppliers" after termination of Modderman's employment with ABC for any reason. Am. Compl. ¶ 46; Ex. A. The Agreement also provides that during and for one year after Modderman's employment with ABC he would not solicit "any customer, supplier . . . or other business relation of [ABC]." Am. Compl. ¶ 47.

Defendant Home Medical Supplies, Inc., ("HMS") is a regional competitor of ABC. Am. Compl. ¶ 14. HMS also sells urological and ostomy supplies directly to consumers, primarily in Colorado. Am. Compl. ¶ 16. HMS is owned and operated by Pamela and Richard Jones. Am Comp. ¶ 14.

ABC alleges that beginning in the fall of 2014, Modderman diverted ABC customers to HMS. Am. Compl. ¶ 4-5. Modderman resigned from his position at ABC on January 26, 2015. Am. Compl. ¶ 62. ABC alleges that following his resignation, at least sixteen Colorado ABC customers serviced by Modderman have canceled their accounts, and that at least some of those customers now purchase supplies through HMS. Am. Compl. ¶ 67. In addition, ABC alleges that Modderman has continued to solicit Colorado customers for HMS who would otherwise have been ABC customers. Am. Compl. ¶ 71.

HMS and Modderman maintain, and ABC does not dispute, that there was no formal employment relationship between HMS and Modderman. ABC does not allege that Modderman

received any payment for referring customers to HMS. However, ABC points to a series of emails and other communications[1] between Modderman, HMS employees, and former ABC clients that ABC argues demonstrate a deliberate attempt to divert customers from ABC in violation of Modderman's Restrictive Covenant Agreement. Am. Compl. ¶ 60.

As early as September 2014, while Modderman was still employed by ABC, Modderman referred ABC patients to HMS. Am. Compl. ¶ 55-58, 60. On September 30, 2014, Modderman forwarded an ABC order form from an ABC customer to Pamela and Richard Jones and referred to the customer as "[o]ur first real client." Plaintiff's Memorandum in Opposition to Transfer, Ex. A. Modderman referred other ABC patients to HMS on October 15, October 17, October 20, and December 11, 2014. *Id.* Exs. C-D, F. On January 19, 2015, just before his resignation from ABC, Modderman sent a new customer referred to Modderman by a urology office to HMS using a different email signature line, which gave Modderman's job title as "Rocky Mountain Regional Sales Manager" and omitted any affiliation with ABC. *Id.* Ex. G. On the same day, January 19, 2015, Modderman emailed another new customer introducing himself and Pamela Jones as "Rick & Pam from Home Medical Supply (HMS) in LoneTree." *Id.* Ex. H.

Modderman also communicated with HMS regarding his marketing efforts on HMS's behalf, beyond simply referring patients. On September 30, 2014, Modderman emailed Pamela Jones to discuss creating a marketing brochure specifically for HMS. *Id.* Ex. B. Modderman asked Jones "what HMS contact info" to print on the brochure. *Id.* Modderman reminded Jones "my name is nowhere near this" and instead said he would use a promo number, "007," as an identifier. *Id.* Modderman later followed up by email to Richard Jones attaching a PDF of the

---

[1] It appears that ABC recovered these emails from a hard drive backup retained by ABC after Modderman's resignation that was created by remote backup software Modderman previously installed on his laptop at ABC's suggestion. Am. Compl. ¶ 52.

HMS flyer and requesting fifty copies. *Id.* Ex. E. The attached flier gave contact information for HMS and Pamela and Richard Jones, but requested that prospective customers use the promo code "007." *Id.*

In addition, ABC alleges that Modderman approached ABC customers and asked them to switch from ABC to HMS. "Following Modderman's resignation, an ABC medical supply customer has reported [to ABC] that Modderman called the patient and asked the patient to 'come with me.'" Am. Compl. ¶ 63. ABC also alleges that Modderman solicited referrals from medical providers on behalf of HMS. On or around February 25, 2015, after his resignation from ABC, Modderman allegedly visited an ABC referring provider "on behalf of HMS." Am. Compl. ¶ 65. During that visit, Modderman provided contact information for HMS. *Id.* When an ABC employee called HMS and asked for Modderman, an HMS employee provided Modderman's cell phone number and said that "Modderman was not in the office and that Modderman does not come into the office very often and could be reached by cell phone." *Id.*

On June 23, 2015, ABC filed its Amended Complaint in this Court asserting claims for breach of contract against Modderman, tortious interference with contract against HMS, and misappropriation of trade secrets against both defendants. In summary, ABC alleges that Modderman and HMS deliberately diverted Colorado customers from ABC to HMS in violation of the Restrictive Covenant Agreement and that Modderman provided HMS with ABC's confidential business material in the form of client lists and contact information.

ABC avers that this Court has personal jurisdiction and that venue is properly laid because of a clause in ABC and Modderman's Restrictive Covenant Agreement, which provides:

> This Agreement and the respective rights and obligations of the parties shall be governed by and determined in accordance with the laws of the Commonwealth of Pennsylvania, without giving effect to its conflicts of law principles or rules. Each party hereby irrevocably consents to the exclusive jurisdiction of the state and federal

5

> courts of the Commonwealth of Pennsylvania and irrevocably agrees that all actions or proceedings relating to this Agreement shall be litigated in such courts. Each party waives any objection which it may have based on lack of personal jurisdiction, improper venue or forum non conveniens to the conduct of any proceeding in any such court and waives personal service of any and all process upon them.

Am. Compl. ¶ 18. ABC argues that this clause is also binding on HMS based on HMS's close relationship with Modderman. Am. Compl. ¶ 20. There is subject matter jurisdiction in this Court based on diversity of citizenship. 28 U.S.C. § 1332.

On July 17, 2015, HMS filed the instant Motion requesting this Court transfer the case to the District of Colorado pursuant to 28 U.S.C. § 1404(a) or in the alternative to dismiss the Amended Complaint as to HMS for lack of personal jurisdiction. HMS argues that it lacks sufficient minimum contacts with Pennsylvania to establish personal jurisdiction and that there is no substantial relationship between HMS and Modderman to bind HMS to the Restrictive Covenant Agreement. Brief in Support of Motion of HMS to Transfer at 9, 12.

Modderman is proceeding pro se in this case and has not officially joined HMS's motion to transfer. Modderman is a paraplegic and has used a wheelchair since a motorcycle accident in 1987. Modderman's Answer to Complaint (Document No. 11) at 1. He has informed the Court that he is currently unemployed and has applied for Social Security disability benefits. *Id.*

### III. DISCUSSION

#### A. Personal Jurisdiction over Defendant HMS

This case involves events that occurred almost entirely in Colorado. All of the customers and referral providers allegedly diverted from ABC to HMS are located in Colorado. Thus, the first question the Court must address is whether personal jurisdiction over HMS is proper.

"A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Pennsylvania's long-arm statute provides for

personal jurisdiction to the fullest extent allowed under the Constitution's due process clause. 42 Pa. Cons. Stat. Ann. § 5322. There are two types of personal jurisdiction: general and specific. General jurisdiction exists where defendant has "continuous and systematic" contact with the forum state and does not require the underlying cause of action to be related to defendant's activities in the state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). General jurisdiction over a corporation is limited to its place of incorporation and its principal place of business. *Chavez v. Dole Food Co., Inc.*, 796 F.3d 261, 270 (3d Cir. 2015) (citing *Goodyear*).

There is no general jurisdiction over HMS in this Court. HMS is a Nevada corporation with a principal place of business in Colorado. Am. Compl. ¶ 14. HMS does not have any customers in Pennsylvania. No officer or representative of HMS has ever visited Pennsylvania. Accordingly, as plaintiff concedes, HMS does not have "continuous and systematic contacts" with Pennsylvania sufficient for general jurisdiction.

Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy." *Goodyear*, 131 S. Ct. at 2851 (citations omitted). "Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (citations omitted). To establish specific jurisdiction, plaintiff must show that (1) "the defendant purposely directed its activities at the forum" and (2) "the litigation must arise out of or relate to at least one of those activities." *Corigliano v. Classic Motor, Inc.*, 611 F. App'x 77, 79-80 (3d Cir. 2015). If these requirements are satisfied, the court has jurisdiction if the exercise of jurisdiction "would comport with fair play and substantial justice." *Id.* at 80.

Plaintiff avers that this Court has specific jurisdiction over HMS based on two separate arguments. First, plaintiff argues that jurisdiction is appropriate based on the *Calder* effects test.

7

*Calder v. Jones*, 465 U.S. 783 (1984). Second, plaintiff alleges that HMS is bound by the forum selection clause in the Restrictive Covenant Agreement between ABC and Modderman and that therefore HMS has consented to personal jurisdiction in this case. For the reasons discussed below, the Court finds that neither of these arguments provides a basis for the exercise of specific jurisdiction over HMS in this case.

### 1. Specific Jurisdiction Based on the *Calder* Effects Test

ABC alleges that HMS became subject to specific jurisdiction in this Court when HMS committed the intentional torts of tortious interference with contract and misappropriation of trade secrets. An intentional tort committed outside of the forum state may provide a basis for specific jurisdiction if the "brunt of the harm" is felt in the forum state. *Calder*, 465 U.S. at 789. In the context of business torts, *Calder* requires a three-step analysis. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998). Plaintiff must show "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and] (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *Id.* The third part of this test can only be satisfied "if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum." *Id.* at 265 (emphasis original). "Simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement." *Id.*

In cases involving alleged tortious interference with contract, courts conduct a fact-specific inquiry to determine whether the high standard of the third element of the *Calder* test is met. *Radian Guaranty Inc. v. Bolen*, 18 F. Supp. 3d 635, 644 (E.D. Pa. 2014). In *Radian*, the

court considered a claim of tortious interference with a similar non-compete provision to the one in this case. *Id.* at 639. In that case, the corporate defendant hired the defendant employee to work in Texas and the defendant employee worked exclusively with customers in Texas. *Id.* at 644. Neither the defendant corporations nor the defendant employee were Pennsylvania residents and no part of the contractual negotiations occurred in Pennsylvania. *Id.* The *Radian* court held that defendants' knowledge that plaintiff was headquartered in Pennsylvania combined with defendants' awareness of the Pennsylvania forum selection clause in the defendant employee's contract of employment was insufficient to show the defendants' had expressly aimed their tortious conduct at Pennsylvania as required by *Calder*. *Id.* at 645. That court therefore concluded that it lacked personal jurisdiction over the defendants. *Id.*

ABC cites *Remick v. Manfredy* for the proposition that if plaintiff's professional activities are centered in Pennsylvania, the tortious interference must have been aimed at Pennsylvania. 238 F.3d 248, 258 (3d Cir. 2001). In *Remick*, the plaintiff was a lawyer whose office was located in Pennsylvania. *Id.* at 252-53. The dispute arose out of plaintiff's representation of defendants in his capacity as a lawyer licensed by Pennsylvania in a contract governed by Pennsylvania law. *Id.* The plaintiff and defendants conducted most of the business underlying the contract at issue within Pennsylvania and the representation agreement itself was executed in Pennsylvania. *Id.* The court concluded that the tortious conduct was expressly aimed at Pennsylvania because plaintiff "conducted the majority of his negotiation, consultation, and advice services . . . out of his Philadelphia office" and that therefore personal jurisdiction was appropriate. *Id.* at 260.

In this case, the first two elements of *Calder* are met: based on ABC's Amended Complaint, HMS committed an intentional tort and ABC felt the brunt of the harm of the tort in Pennsylvania at its principal place of business. However, ABC has not satisfied the third element

of *Calder* because it has not alleged sufficient evidence that HMS expressly aimed its tortious conduct at Pennsylvania. In this case, all of the tortious conduct, the diversion of customers and Modderman's activities, occurred in Colorado. While ABC alleges that because the harm was felt in Pennsylvania, HMS's conduct was directed at Pennsylvania, this conflates the second and third elements of the *Calder* test. As in *Radian* where the defendant employee subject to the non-compete worked solely in Texas, Modderman solicited and serviced customers solely in Colorado, not Pennsylvania. This case is distinguishable from *Remick* where the plaintiff was a Pennsylvania lawyer who conducted most of the relevant services on the underlying contract in Pennsylvania because no significant part of the contractual performance in this case occurred in Pennsylvania.

In this case, Modderman, HMS, and the customers at issue only had contact with Pennsylvania tangentially, when information was routed through ABC's central office or when payments were ultimately remitted to ABC. No significant part of the business transactions covered by the contract—the initial referral of the customer, the customer's order of supplies from Modderman, or the ultimate provision of the supplies to the customer—occurred in Pennsylvania. All of the alleged customers who were diverted from ABC to HMS reside in Colorado and the trade secrets at issue in this case are the lists of Colorado customers and providers. Moreover, the underlying Restrictive Covenant Agreement in this case was not negotiated in Pennsylvania, but rather was prepared by ABC in Pennsylvania and submitted to Modderman in Colorado by fax, where he signed and returned it to Pennsylvania by fax. ABC does not even allege that Modderman has ever visited Pennsylvania. As explained in *Radian* where the defendants were also aware that the plaintiffs were headquartered in Pennsylvania, the mere fact that Modderman and HMS were aware that ABC was headquartered in Pennsylvania is

10

not sufficient to show that HMS's alleged tortious conduct was expressly aimed at Pennsylvania. 18 F. Supp. 3d at 644-45 (citing *IMO Indus.*, 155 F.3d at 265). Accordingly, there is no specific jurisdiction over HMS based on the *Calder* effects test.

## 2. Specific Jurisdiction based on the Restrictive Covenant Agreement

In the alternative, ABC argues that because of the close relationship between HMS and Modderman, HMS is bound by the Restrictive Covenant Agreement and personal jurisdiction is appropriate in this Court based on the Agreement's forum selection clause. "It is widely accepted that non-signatory third-parties who are closely related to a contractual relationship are bound by forum selection clauses contained in the contracts underlying the relevant contractual relationship." *First Fin. Mgmt. Grp. Inc. v. Univ. Painters of Balt., Inc.*, No. 11-cv-5821, 2012 WL 1150131 at *3 (E.D. Pa. Apr. 5, 2012). "[C]ourts considering this question of whether a non-signatory may be bound by a forum selection clause take a common sense, totality of the circumstances approach that essentially inquires into whether, in light of those circumstances, it is fair and reasonable to bind a non-party to the forum selection clause." *Synthes, Inc. v. Emerge Medical, Inc.*, 887 F. Supp. 2d 598, 607 (E.D. Pa. 2012) (citations omitted). "All that is required is facts demonstrating a close relationship to the signatory or to the contractual dispute, such that application of the forum selection clause was reasonably foreseeable." *Id.* at 613.

Courts in two recent cases in this district have considered the effect of forum selection clauses in employment contracts on third-parties in alleged tortious interference with contract claims. *See Synthes*, 887 F. Supp. 2d at 603; *Radian*, 18 F. Supp. 3d at 645. In both of those cases, the courts focused on specific facts that made it reasonably foreseeable that the third-party defendant would be bound by the defendant employee's forum selection clause. Because the defendants in *Synthes* and *Radian* were aware of the non-compete clauses prior to the alleged

tortious conduct and because of the close relationships between the signatory and non-signatory defendants, those courts concluded that personal jurisdiction over the non-signatory defendants was appropriate based on the signatory defendants' forum selection clauses. *Synthes*, 887 F. Supp. 2d at 611; *Radian*, 18 F. Supp. 3d at 647.

In *Synthes*, the plaintiff was a medical device company that employed three of the defendants as salespeople. 887 F. Supp. 2d at 599. The salespeople signed non-solicitation and non-competition agreements that included forum selection clauses. *Id.* at 599, 606. The defendant salespeople created a competing venture, Emerge, along with an unaffiliated defendant, who became the new venture's Chief Operating Officer ("COO"). *Id.* at 603. The plaintiff sought to join the COO and asserted personal jurisdiction based on the salespeoples' forum selection clause, even though the COO was not a signatory to the agreement. *Id.* at 606.

The *Synthes* court focused on four key pieces of evidence. First, plaintiff in that case alleged that the COO worked closely with the salespeople while they were still employed by the plaintiff. *Id.* at 610. Second, plaintiff produced evidence that the COO "had extensive knowledge of the Non-Competition Agreements and worked with lawyers to structure Emerge's initial business in such a way that Emerge hoped would avoid the appearance of a breach of those agreements." *Id.* at 610-11. Third, the COO and other employees of Emerge warned investors of the possibility of liability based on breach of the salespeoples' non-compete agreements. *Id.* at 611. Finally, the plaintiff produced evidence of frequent discussions at Emerge of the "perils associated with the non-compete provisions." *Id.* Taken together, the court concluded that this evidence showed that the non-signatory defendant COO "should have reasonably foreseen that he would be bound by these forum selection clauses" and therefore that personal jurisdiction was appropriate. *Id.*

In *Radian*, the court considered whether there was personal jurisdiction over a non-signatory defendant who hired a defendant employee who had a non-compete agreement (including a forum selection clause) with the plaintiff. 18 F. Supp. 3d at 645. As in *Synthes*, the court focused on evidence that the non-signatory defendant was aware of the non-compete agreement prior to hiring the defendant employee. *Id.* at 646-47. Specifically, the court first noted that the non-signatory defendant interviewed the defendant employee before she left her job with the plaintiff. *Id.* at 646. Second, the court noted that the non-signatory defendants were aware of the existence of the non-compete agreement before the employee defendant was hired. *Id.* at 647. Third, plaintiff presented evidence that the officers of the non-signatory defendants discussed the "risk of hiring a new employee with a non-competition agreement." *Id.* The *Radian* court thus concluded that personal jurisdiction was appropriate because the non-signatory defendant sought to employ the defendant employee "while knowing that she was employed . . . under a contract with a noncompetition agreement, [defendants] are sufficiently closely related to [the employee] so as to foresee being bound by the forum selection clause." *Id.*

In this case, ABC has not established that HMS could reasonably have foreseen being bound by Modderman's Restrictive Covenant Agreement. There has been no evidentiary hearing on personal jurisdiction in this case and therefore "the plaintiff need only establish a prima facie case of personal jurisdiction." *Corigliano*, 611 F. App'x at 79. There are several key differences between the facts of this case as alleged in ABC's Amended Complaint and the facts of *Synthes* and *Radian* that make it unreasonable to bind HMS to the terms of Modderman's restrictive covenant agreement.

First, Modderman, unlike the defendants in *Synthes* and *Radian*, is not employed by HMS. While ABC alleges some circumstantial evidence that Modderman has in the past and

13

continues to distribute marketing materials on HMS's behalf, they have not alleged that HMS compensated Modderman for referring customers. HMS could not reasonably foresee being bound to Modderman's agreement when Modderman is not an HMS employee or independent contractor, or legally affiliated in any way with HMS.

Second, in *Synthes* and *Radian*, the plaintiffs adduced evidence that the non-signatory defendants were aware of the non-compete agreements before the tortious conduct occurred and the fact that they might be affected by the agreement. This is markedly different than the facts of this case. ABC does not allege that HMS became aware of Modderman's Restrictive Covenant Agreement until *after* the alleged tortious activity. Am. Compl. ¶ 69. Specifically, HMS learned of the Restrictive Covenant Agreement on March 16, 2015, when ABC's lawyer sent a demand letter with a copy of the Agreement attached. *Id.* ABC does not allege that HMS became aware of the Restrictive Covenant Agreement through other means prior to the demand letter. At the time Modderman and HMS allegedly diverted ABC's customers, HMS was not aware of Modderman's Restrictive Covenant Agreement and thus could not have foreseen being bound by the forum selection clause.

The informal relationship between Modderman and HMS and the lack of notice to HMS of the non-compete agreement until after the alleged tortious acts make it unreasonable to bind HMS to Modderman's Restrictive Covenant Agreement and the included forum selection clause. Under the totality of the circumstances, it would not be fair and reasonable to bind HMS to Modderman's selection of a Pennsylvania forum. Accordingly, there is no specific jurisdiction over HMS based on Modderman's Restrictive Covenant Agreement.

### B. Transfer Under 28 U.S.C. §1404(a) and § 1406(a)

Having concluded that the Court lacks jurisdiction over HMS, the Court must decide whether to transfer the entire case, sever and transfer only the claims against HMS, or dismiss HMS from the case for lack of personal jurisdiction. In the interest of justice and judicial efficiency, the Court transfers the entire case to the District of Colorado.

When a district court lacks personal jurisdiction over a defendant, the court may choose to dismiss the defendant from the action or transfer the case to "any district or division in which it could have been brought" pursuant to 28 U.S.C. § 1406(a). *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) (citing 28 U.S.C. § 1406(a)). By contrast, when the court has personal jurisdiction and venue is proper, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought" pursuant to 28 U.S.C. § 1404(a).

There is a complication in this case posed by Modderman's Restrictive Covenant Agreement. Modderman is undoubtedly bound by that agreement, which provides that Modderman "irrevocably consents to the exclusive jurisdiction of the state and federal courts of the Commonwealth of Pennsylvania" and "waives any objection . . . based on lack of personal jurisdiction, improper venue, or forum non conveniens." Am. Compl. ¶ 18; Ex. A. Modderman and HMS do not dispute the validity of the forum selection clause as applied to Modderman. However, as discussed above, the forum selection clause does not bind HMS in this case because of the lack of a relationship between Modderman and HMS such that HMS could reasonably have foreseen being bound.

Where a valid forum selection clause exists, the district court should only transfer the case "under extraordinary circumstances unrelated to the convenience of the parties." *Atlantic*

*Marine Construction Co., Inc. v. United States District Court for W.D. Tex.*, 134 S. Ct. 568, 581 (2013). In *Atlantic Marine*, the Supreme Court held that in considering a motion for transfer "for the convenience of parties and witnesses" pursuant to § 1404(a), the district court should ordinarily defer to the parties preselected choice of forum. *Id.* at 582. "[W]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses[.]" *Id.* This leaves only the so-called "public interest factors" to be considered in deciding whether to transfer an action over a forum selection clause. *Id.* These factors include "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).

Any transfer of the claims against HMS in this case would be pursuant to § 1406(a), not § 1404(a), because the Court lacks personal jurisdiction over HMS. *Lafferty v. St. Riel*, 495 F.3d 72, 77 (3d Cir. 2007) ("Section 1406(a) comes into play where plaintiffs file suit in an improper forum. In those instances, district courts are required either to dismiss or transfer to a proper forum."). Thus, the Supreme Court's *Atlantic Marine* analysis, which dealt with transfer under § 1404(a), does not apply to the decision of whether to transfer the claims against HMS. The claims against HMS must either be transferred to an appropriate court under § 1406(a) or dismissed from the case entirely.

The Court must also decide whether to transfer the claims against Modderman along with HMS. Because personal jurisdiction and venue are appropriate as to Modderman based on the Restrictive Covenant Agreement, transfer of the claims against Modderman to another district

under § 1406(a) is not appropriate. *Lafferty*, 495 F.3d at 79 ("[W]e do not allow courts to force transfers [under § 1406(a)] 'in the interest of justice' where venue is otherwise proper."). Accordingly, the claims against Modderman must be transferred, if at all, pursuant to § 1404(a). While *Atlantic Marine* dealt with the transfer of a case to the preselected forum over plaintiff's objection, rather than as in this case a transfer of a defendant out of the preselected forum over plaintiff's objection, the Court believes that the principals of *Atlantic Marine* should govern the analysis. The Court considers, therefore, in light of *Atlantic Marine*, whether this is one of the rare cases where "extraordinary circumstances unrelated to the convenience of the parties" justify transfer of a defendant pursuant to § 1404(a) over an exclusive forum selection clause.

Because the claims against HMS must be transferred or dismissed, failing to transfer the claims against Modderman as well would require severance of the defendants currently joined in this case. A situation where only some of the parties are bound to the forum selection clause "implicat[es] concerns attending parallel lawsuits not present in *Atlantic Marine*." *In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014). In *Rolls Royce*, the Court of Appeals for the Fifth Circuit determined that "the need—rooted in the valued public interest in judicial economy—to pursue the same claims in a single action in a single court can trump a forum selection clause." 775 F.3d at 679; *see also Howmedica Osteonics Corp. v. Sarkisian*, No. 14-cv-3449, 2015 WL 1780941 at *5-7 (D.N.J. Apr. 20, 2015) (transferring entire case to single forum where defendants had multiple conflicting exclusive forum selection clauses, rather than sever litigation and transfer each defendant to separate forums). In determining whether to sever defendants in a multiparty case, the court must consider whether "the administration of justice would be materially advanced." *Sunbelt Corp. v. Noble, Denton, & Assocs., Inc.*, 5 F.3d 28, 34 (3d Cir. 1993). "The court should not sever if the defendant over whom jurisdiction is retained is

so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." *Id.* at 33-34 (citations omitted). "[B]efore dividing the case, the District Court should weigh the factors favoring transfer against the potential inefficiency of requiring the similar and overlapping issues to be litigated in two separate forums." *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 111 (3d Cir. 2009).

This case concerns a single dispute that cannot be easily separated without requiring substantially the same issues to be litigated in two separate forums. The underlying allegations of the breach of contract claim and the tortious interference with contract claim both involve a transfer of patients from ABC to HMS via the alleged activities of Modderman and will require establishing substantially the same factual record. The misappropriation of trade secrets claim is asserted against both defendants and would therefore need to be litigated twice in both forums. Modderman and the HMS officers will be required to participate as witnesses in both actions if they are severed because the witnesses in all of the claims will be the same: ABC officers and employees, HMS officers and employees, Modderman, and third-party patients and referral sources. The Court concludes that severing the two defendants is not appropriate because it would require litigation of substantially the same issues in two different courts.

For the foregoing reasons the Court concludes that "extraordinary circumstances unrelated to the convenience of the parties" exist that justify the transfer of the claims against Modderman pursuant to § 1404(a). This is proper despite the forum selection clause because this Court lacks personal jurisdiction over HMS and severance of the claims against HMS from the claims against Modderman would result in inefficient and duplicative litigation. The public interest in efficiency served by litigating substantially the same claims in one court rather than two outweighs the prior agreement as to forum of ABC and Modderman.

Accordingly, the Court will transfer the claims against HMS pursuant to § 1406(a) and the claims against Modderman pursuant to § 1404(a) to a district in which this action originally could have been filed. Because the events underlying this action occurred in Colorado and both Modderman and HMS are subject to general personal jurisdiction in Colorado, the Court will transfer the entire case to the United States District Court for the District of Colorado.

## IV.   CONCLUSION

For all of the foregoing reasons, defendant Home Medical Supplies, Inc.'s Motion to Transfer Venue for the Convenience and Availability of Third Party Witnesses or to Dismiss for Lack of Personal Jurisdiction is granted in part and denied in part. That part of HMS's motion seeking transfer of the claims against HMS to the District of Colorado is granted pursuant to 28 U.S.C. § 1406(a). That part of HMS's motion seeking dismissal of the claims against HMS for lack of personal jurisdiction is denied as moot. In addition, in the interest of justice, the Court transfers the claims against defendant Modderman to the District of Colorado pursuant to 28 U.S.C. § 1404(a). The entire case is thus transferred to the United States District Court for the District of Colorado. An appropriate order follows.